IN THE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

SCOTTSDALE INSURANCE COMPANY,
as subrogee of NATIONAL CONCRETE
PRESERVATION, INC.,

      Plaintiff,

vs.                                                                    CASE NO.:

GRANADA INSURANCE COMPANY,

      Defendant.

_____/

## COMPLAINT FOR DECLARATORY RELIEF
## AND BREACH OF CONTRACT

SCOTTSDALE INSURANCE COMPANY ("Scottsdale"), as subrogee

of NATIONAL CONCRETE PRESERVATION, INC., by and through

undersigned counsel, files its Complaint for Declaratory Relief and Breach

of Contract against Defendant, GRANADA INSURANCE COMPANY

("Granada"), and as grounds therefore states as follows:

## JURISDICTION AND VENUE

1.      This is an action for declaratory relief pursuant to 28 U.S.C.

Section 2201.

2.      Jurisdiction is proper in this Court pursuant to 28 U.S.C.

Section 1332, because the parties are of diverse citizenship and the

amount in controversy is in excess of $75,000.00 exclusive of interest, costs and attorney's fees.

3.    Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. Section 1391(a) because a substantial part of the events, transactions and allegations giving rise to this action occurred in this District.

## PARTIES

4.    Plaintiff Scottsdale is an insurer incorporated in the State of Ohio with its principal place of business in Columbus, Ohio.

5.    Defendant Granada is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Miami, Florida.   For purposes of diversity jurisdiction, Granada is not a citizen of the State of Ohio.

## FACTS GIVING RISE TO THE ACTION

6.    Eldorado    Towers    Condominium    Association,    Inc. ("Association") entered into a contract with National Concrete on or about October 29, 2010 for the repair and restoration of a pool, Jacuzzi, pool decks, club house decks, and a garage area (hereinafter "Project"), located in Aventura, Miami-Dade County, Florida.   (See Contract attached as Exhibit "A.")

7.     On or about October 13, 2015, the Association filed a Complaint against National Concrete alleging causes of action for breach of contract and negligence in the Circuit Court in and for Miami-Dade County, Florida, Case Number 2015023546CA01.   The lawsuit alleged defects and deficiencies in the work on the Project, including property damage arising out of the work of Rosmel Pools, Inc. ("Rosmel").  (See Complaint attached as Exhibit "B.")   The Association subsequently filed an Amended Complaint, Second Amended Complaint, Third Amended Complaint and Fourth Amended Complaint against National Concrete (All Complaints, including the initial Complaint hereinafter "Complaints").  (See Amended Complaint, Second Amended Complaint, Third Amended Complaint and Fourth Amended Complaint attached as Composite Exhibit "C.")   The causes of action by the Association against National Concrete remained the same and the allegations regarding the Project generally remained the same.

8.     Scottsdale issued three general liability policies to National Concrete for the policy periods of January 12, 2011 to January 12, 2014 (policy numbers BCS0023882, BCS0026736 and BCS0029499).   (See Scottsdale policies attached as Composite Exhibit "D.")

9.      Scottsdale's Amendment to Other Insurance Condition endorsement (Form GLS-152s 912-96) provides in pertinent part:

> Condition **4. Other Insurance of SECTION IV-COMMERCIAL GENERAL LIABILITY CONDITIONS** is deleted in its entirety and is replaced by the following:
>
> **4.      Other Insurance**
>
> **a.      Primary Insurance**
>
> This insurance is primary except when **b.** below applies.
>
> **b.      Excess Insurance**
>
> This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:
>
> *      *      *      *
>
> (4)     That is valid and collectible insurance available to you under any other policy.
>
> When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit."   If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.
>
> *      *      *      *

10.    Pursuant to Scottsdale's policies issued to National Concrete, Section IV – Commercial General Liability Conditions, 8. Transfer Of Rights Of Recovery Against Others To Us:

> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us.  The insured must do nothing after loss to impair them.  At our request, the insured will bring "suit" or transfer those rights to us to help us enforce them.

11.    Based upon these provisions, the coverage provided under Scottsdale's policies issued to National Concrete are excess over any policy that is valid and collectible, and Scottsdale is subrogated to National Concrete's rights.  As discussed below, National Concrete is an additional insured under Granada's policy issued to Rosmel, which policy provides coverage to National Concrete on a primary and non-contributory basis.

12.    Scottsdale provided (and continues to provide) a defense to National Concrete for the allegations in the Complaints under a full and complete reservation of rights to later decline coverage for any damages not triggering coverage under the policies.  To date, Scottsdale expended substantial sums to defend National Concrete for the allegations in the Complaints, which expenses are continuing.

**Rosmel Pools, Inc.**

13.    National Concrete and Rosmel entered into a subcontract dated August 18, 2011, in which Rosmel agreed to perform work and supply materials in accordance with the subcontract for the Project.  The pertinent portions of the subcontract state:

\*       \*       \*       \*

## ARTICLE 13 – INSURANCE

(a)    Insurance

(i)    Required Coverage.    Subcontractor [Rosmel] will maintain and pay for all of the following insurance coverage throughout the term of this Agreement and in at least the minimum limits set forth below, as may be further increased in connection with the Contract Documents and the Owner's requirements:

\*       \*       \*       \*

Commercial General Liability Insurance for liability from damages because of … damage to property arising out of or from Subcontractor's operations under this Agreement in limits required by the Subcontract Documents or otherwise required by Contractor, but not less than $1,000,000 per occurrence or combined single limit and $1,000,000 in aggregate and $1,000,000 for products and completed operations coverage. The insurance furnished under this sub-paragraph will include broad form contractual liability insurance and coverage for

independent contractors and completed operations.

\*       \*       \*       \*

(ii)    Notwithstanding anything to the contrary set forth herein the completed operations coverage shall be maintained by Subcontractor for a minimum of one (1) year following Final Completion, or such longer period as may be required by the Prime Contract.

(iii)    The policy or policies required to be provided by Subcontractor hereunder will be endorsed to include the Owner and Contractor [National] as additional insureds and will state that the insurance is primary insurance with regard to any other insurance carried by Owner or Contractor.

\*       \*       \*       \*

## ARTICLE 24 – INDEMNIFICATION

(a)    To the fullest extent permitted by applicable law, Subcontractor agrees to indemnify, defend and hold harmless Contractor … and each of their respective affiliated companies, partners, successors, assigns, heirs, legal representatives, devisees, officers, directors, shareholders, employers, insurers and agents (herein collectively called "Indemnitees") from and against all claims, demands, actions, liens, compensatory damages, punitive damages, liability, costs, expenses, and attorney's fees of any nature, kind or description of any person or entity, directly or indirectly arising out of, caused by or resulting from (in whole or in part) (1) work performed

7

hereunder; (2) this Agreement and the Subcontractor Documents; or (3) any act, omission or negligence of Subcontractor, including agents, contractors, suppliers, employees, or servants of Subcontractor and persons directly or indirectly controlled by Subcontractor, regardless or whether such act, omission or negligence is within or outside of the scope of any of the abovementioned entities' duties under this or any other agreement (herein collectively called the "Liabilities"), even if such Liabilities are caused in part by the negligence of any Indemnitee.   Notwithstanding the foregoing, Subcontractor will not be required to indemnify the Indemnities with respect to Liabilities resulting from gross negligence or willful misconduct of an Indemnitee.   It is agreed with respect to any legal limitations now or hereinafter in effect and affecting the validity and enforceability of the indemnification obligation under this Article, such legal limitations are made a part of the indemnification obligation to the minimum extent necessary to bring this Article in conformity with the requirements of such limitations as so modified, the indemnification obligation shall continue in full force and effect.  Subcontractor's obligation to indemnify the Indemnitees for Indemnitee's own negligence shall be limited to the amount of the Contract Sum, plus applicable change orders.   The obligations of Contractor under this Subparagraph shall survive the expiration or termination of the Subcontract.  The parties hereto acknowledge (a) that this Article complies with Section 725.06 of the Florida Statutes; and (b) that this Article is part of the project specification and bid documents.

(b)    Subcontractor acknowledges that One Hundred and No/100 U.S. Dollars ($100.00) of the Subcontract Sum is given by Contractor and accepted by Subcontractor as specific consideration for the indemnification provided in this article and further acknowledges that this indemnification provision is a significant part of the inducement for Contractor to enter into this Subcontract.    This Article shall survive the termination or cancellation of this Agreement.

(See subcontract attached as Exhibit "E," some emphasis added.)

14.    The general contract documents required the following insurance provisions:

## ARTICLE 17 INSURANCE AND BONDS

\*      \*      \*      \*

**§ 17.1** The Contractor shall purchase from, and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which this Project is located, insurance for protection … claims for damages, other than to the Work itself, to property which may arise out of or result from the Contractor's operations and completed operations under the Contract, whether such operations be by the Contractor or by a Subcontractor or anyone directly or indirectly employed by any of them.  This insurance shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater, and shall include contractual liability insurance applicable to the Contractor's obligations under Section 9.15….   The Contractor shall cause the commercial liability coverage required by the Contract Documents to include: (1) the Owner, the

9

Architect, and the Architect's Consultant's as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations.

(Exhibit "A".)

15.     Defendant Granada issued a commercial lines policy that contained commercial general liability coverage to Rosmel for the policy period of July 29, 2011 to July 29, 2012 (policy number 0185FL00010952) with limits of liability of $1,000,000 per occurrence/$1,000,000 general aggregate coverage.[1]  (See Rosmel's policy attached as Exhibit "F.")

16.     The July 29, 2011 to July 29, 2012 policy contains an Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization Endorsement (Form 20 10 07 04), which provides:

SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations | |

---

[1] Granada may have issued general liability policies to Rosmel following the expiration of the July 29, 2011 to July 29, 2012 policy; however, Scottsdale is not in possession of said policies and will obtain them through discovery.

A.    Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for … "property damage" … caused, in whole or in part by:

1.    Your acts or omissions; or

2.    The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

B.    With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury'' or "property damage" … occurring after:

1.    All work, including materials, parts or equipment furnished in connection with such work on the project (other than service, maintenance, or repairs) to be performed by you or on your behalf for the additional insured(s) at the location of the covered operations has been completed; or

2.    That portion of "your work'' out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

*　　*　　*　　*

According to the Declarations of the policy, National is an additional insured.

17.　Pursuant to Granada's policy issued to Rosmel, Section IV – Commercial General Liability Conditions, 4. Other Insurance:

**4.　Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.　Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with that other insurance by the method described in Paragraph **c.** below.

**b.　Excess Insurance**

**(1)**　This insurance is excess over:

**(a)**　Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i)　That is Fire, Extended Coverage, Builder's Risk, Installation Risk

or similar coverage to "your work";

(ii)    That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iv)    That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)**    If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)**    Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional

insured by attachment of an endorsement.

**(2)**     When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)**     When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)**     The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)**     The total of all deductible and self-insured amounts under all that other insurance.

*     *     *     *

18.     Granada's policy provides primary coverage to National Concrete as an additional insured.

19.     Some of the alleged defects and deficiencies in the work on the Project were caused by Rosmel's work.

20.   On or about September 26, 2014, an independent adjuster for Scottsdale sent a letter to Rosmel providing that Rosmel's defective work caused residual leaks that caused damage to the concrete structure below, placed Rosmel on notice of the claim and demanded that Rosmel provide a defense and indemnification to National Concrete as an additional insured and as a contractual indemnitee.  (See September 26, 2014, letter attached as Exhibit "G.")

21.   On or about January 4, 2015, an independent adjuster for Scottsdale sent a follow-up letter to Rosmel confirming that Scottsdale tendered National Concrete's defense and indemnity to Rosmel and again requested Rosmel's liability insurer's contact information.  (See January 4, 2015, letter attached as Exhibit "H.")

22.   On or about May 19, 2015, an independent adjuster for Scottsdale sent a follow-up letter to Rosmel confirming that Rosmel's work caused residual leaks that damaged the structure below and again requested Rosmel's liability insurer's contact information.  (See May 19, 2015, letter attached as Exhibit "I.")

23.   On or about June 15, 2015 an independent adjuster for Scottsdale sent a letter to Granada demanding that Granada provide a defense and indemnity to National Concrete for the alleged property

damage caused by Rosmel's work as a contractual indemnitee and as an additional insured.  (See June 15, 2015, letter attached as Exhibit "J.")

24.   On or about July 2, 2015, Granada sent a reservation of rights letter to the independent adjuster retained by Scottsdale declining to provide a defense and indemnity to National as an additional insured, because Granada lacked sufficient information regarding Rosmel's involvement and liability for the Project.  (See July 2, 2015, letter attached as Exhibit "K.")

25.   On or about October 31, 2016 and March 7, 2017, National Concrete filed Third-Party Complaints against Rosmel for common law indemnification, contractual indemnity, breach of contract, subrogation and negligence alleging defectiveness and deficiencies in Rosmel's scope of work on the Project which resulted in property damage as defined in the policy.  (See Third-Party Complaints attached as Composite Exhibit "L.")

26.   On March 31, 2017, Granada sent a letter to defense counsel for Rosmel denying National Concrete's tender for a defense and indemnity as an additional insured.  (See March 31, 2017, letter attached as Exhibit "M.")

27.   On or about November 20, 2017, Scottsdale sent a letter to Granada demanding that Granada provide a defense and indemnity to

National Concrete for the allegations in the Complaints filed by the Association.  (See November 20, 2017, letter attached as Exhibit "N.")

28.   On December 22, 2017, counsel for Granada sent a letter to counsel for Scottsdale declining to provide a defense and indemnification to National Concrete as an additional insured.  (See December 22, 2017, letter attached as Exhibit "O.")

29.   On January 3, 2018, counsel for Scottsdale sent a follow-up letter to counsel for Granada again demanding that Granada provide a defense and indemnity to National Concrete as an additional insured.  (See January 3, 2018, letter attached as Exhibit "P.")  Scottsdale filed to receive a response.

30.   It is Plaintiff's position that pursuant to the Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization endorsement, National Concrete is an additional insured on a primary basis for any damage which occurred during Granada's policy period arising out of Rosmel's work and Granada owed, and continues to owe, a duty to provide a defense to National Concrete on a primary and non-contributory basis for the allegations in the Complaints because the alleged damages arose, at least in part, out of Rosmel's work.

## <u>COUNT ONE – DECLARATORY JUDGMENT</u>

31.     Scottsdale reiterates and re-alleges Paragraphs 1 through 30, as if fully set forth herein.

32.     There exists a *bona fide*, actual, present and practical controversy and need for the declaration of coverage (duty to defend) available to National Concrete under a policy issued by Granada to Rosmel.

33.     There exists a present ascertainable set of facts, or present controversy as to a state of the facts, concerning the rights and obligations of the parties under the policy of insurance, or the parties are in doubt as to the coverage provided by Granada.

34.     Scottsdale and Granada have actual, present, adverse and antagonistic interests in the subject matter described herein.

35.     All proper and present antagonistic or adverse interests are before this Court by proper process.

36.     All conditions precedent to the initiation or the maintenance of this action were met, occurred or were waived.

37.     All parties who do or may claim an interest in the subject matter hereof are joined herein as parties.

38.     Pursuant to 28 USC Section 2201, Scottsdale is entitled to a declaration that the policy issued by Granada to Rosmel provides coverage, including a duty to defend, to National Concrete as an additional insured on a primary and non-contributory basis for the allegations in the Complaints.

39.     Scottsdale was required to retain the undersigned counsel to protect National Concrete's interests in this matter, and agreed to pay said counsel a reasonable fee, and is entitled to recover its attorneys' fees and costs in this litigation pursuant to section 627.428, Florida Statutes, in addition to the damages outlined above.

WHEREFORE, SCOTTSDALE respectfully requests this honorable Court to enter judgment in its favor declaring that the policy issued by Granada to Rosmel includes a duty to defend National Concrete as an additional insured for the allegations in the Complaints on a primary and non-contributory basis, and for reimbursement under the policy referenced above, for all of the costs and attorney's fees incurred in the defense of National Concrete for the Complaints, for all of the costs and attorney's fees incurred in the prosecution of the third-party action, for all of the costs and attorney's fees incurred in the prosecution and litigation of this declaratory judgment action, that Granada take over and pay for the

defense of National Concrete for the allegations in the Complaints, and such other and further relief to which it is entitled.  Scottsdale further demands a trial by jury for those issues which are triable, and an award of taxable costs in this action.[2]

### COUNT TWO – BREACH OF CONTRACT

40.   SCOTTSDALE reiterates and re-alleges Paragraphs 1 through 30, as if fully set forth herein and further states the following:

41.   Defendant Granada issued a commercial lines policy which provided commercial general liability coverage to Rosmel for the policy period of July 29, 2011 to July 29, 2012, which included an Additional Insured – Owners, Lessees or Contractors – Schedule Person or Organization endorsement.  (See Exhibit "F.")

42.   Even though National Concrete is an additional insured under the policy pursuant to the Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization endorsement, Granada breached its insurance contract(s) by failing to provide additional insured coverage to National Concrete.

43.   National Concrete has a direct right of action for breach of contract against Granada as an additional insured under the policy, to

---

[2] Scottsdale is not seeking indemnity from Granada at this time as it is premature.  Scottsdale reserves the right to bring an action seeking indemnity against Granada in a separate action or amend this Complaint to add claims for indemnity.

which Scottsdale is subrogated to the extent of payments made and fees/costs/expenses incurred and to be incurred.

44.    Due to Granada's breach of contract for its failure to provide a defense to National Concrete as an additional insured for the allegations in the Complaints, Scottsdale incurred and continues to incur costs and attorney's fees in the defense of National Concrete for the Complaints, costs and attorney's fees incurred in the prosecution of the third-party action, and costs and attorney's fees incurred in this action.[3]

45.    Scottsdale maintains the right of subrogation against Granada to recoup costs and attorney's fees incurred, and which continue to be incurred, in the defense of National Concrete for the Complaints, costs and attorney's fees incurred in the prosecution of the third-party action, and costs and attorney's fees incurred in the prosecution of this action.

WHEREFORE, Scottsdale respectfully demands a judgment in its favor for all damages outlined above.  Scottsdale further demands a trial by jury for those issues which are triable, and an award of attorney's fees and taxable costs incurred in this action pursuant to section 627.428, Florida Statutes.

---

[3] See footnote 2.

<u>March 30, 2018</u>
(date)

BUTLER WEIHMULLER KATZ CRAIG LLP


*/s/ Kathy J. Maus*
KATHY J. MAUS, ESQ.
Florida Bar No.: 0896330
kmaus@butler.legal
J. BLAKE HUNTER, ESQ.
Florida Bar No.: 570788
jhunter1@butler.legal
Secondary: lchrist@butler.legal
Mail Center: 400 N. Ashley Drive,
Suite 2300
Tampa, Florida 33602
Telephone: (850) 894-4111
Facsimile: (850) 894-4999
*Attorneys for Plaintiff, Scottsdale*